UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KARLIS MANSON *et al.*,<br>    *Defendants*. | No. 3:22-cr-211 (JAM) |

**ORDER DENYING DEFENDANT MANSON'S MOTION
TO COMPEL DISCLOSURE OF CONFIDENTIAL INFORMANT**

Defendant Karlis Manson has moved to compel the government to disclose the identity of a confidential informant. I will deny the motion because Manson has not carried his burden to show that disclosure of the informant's identity is essential to his defense at trial.

### BACKGROUND

The indictment charges Manson with possessing with intent to distribute controlled substances on or about October 5, 2022. The investigation of Manson involved the execution of federal search warrants at two locations—at the "Hole-N-Da-Wall" store at 136 Barbour Street in Hartford, Connecticut and at a U-Haul storage facility in Plainville, Connecticut. The execution of these two search warrants in turn led to the recovery of narcotics from three places—from Manson's person while he was at 136 Barbour Street during the execution of the search warrant, from his car that was parked outside 136 Barbour Street, and from a U-Haul storage unit that was registered in Manson's mother's name.

The affidavit in support of the federal search warrants relied in part on information from a confidential informant who "has been found to be credible and reliable in past investigations."[1] The informant told law enforcement in September 2022 that Manson was operating a drug

---

[1] Doc. #85-2 at 6 (¶ 9) (search warrant affidavit).

1

trafficking organization out of the store at 136 Barbour Street.[2] The informant also told law enforcement that Manson drove a blue Infiniti SUV and that he stored illegal drugs at various "stash" locations including at two specific storage units at a U-Haul storage facility in Plainville, Connecticut.[3] In addition, the informant advised that Manson kept firearms in a safe at his brother's house in Vernon, Connecticut.[4]

The government corroborated parts of the informant's allegations. For example, law enforcement observed a blue Infiniti SUV for extended periods of time at 136 Barbour Street.[5] Law enforcement also observed Manson leave his home one day in West Hartford, make a stop at the U-Haul facility in Plainville, and then go directly to 136 Barbour Street.[6] In addition, law enforcement learned by subpoena to the U-Haul facility that the two units identified by the informant were registered in the names of Manson's mother and step-father.[7] A drug-sniffing dog was brought to the U-Haul facility, and it gave a positive alert outside both these units.[8]

On the morning of October 5, 2022, a federal magistrate judge approved search warrants for 136 Barbour Street and for the two storage units at the U-Haul facility in Plainville. Both warrants were executed later that day.

When law enforcement executed the search warrant at the store at 136 Barbour Street, they found Manson was there among many other people, and the search recovered a wide range of firearms, illegal drugs, and drug processing items inside the store.[9] An officer conducted a

---

[2] *Ibid.*
[3] *Id.* at 8 (¶¶ 12–13); Doc. #85-1 (DEA report of investigation).
[4] Doc. #85-2 at 8 (¶ 12).
[5] *Id.* at 8 (¶ 12).
[6] *Id.* at 8–9 (¶ 13).
[7] *Id.* at 9–10 (¶¶ 14–15).
[8] *Id.* at 10–11 (¶¶ 16–17). Manson has separately filed a motion to suppress that challenges the reliability of this canine alert, but the reliability of this alert is not material to the instant motion to disclose the identity of the informant.
[9] Doc. #46 at 5–6; Doc. #86-6 at 2–12. The government stated at oral argument that it will not seek at trial to attribute these firearms, drugs, and drug paraphernalia specifically to Manson.

pat-down search of Manson and recovered about 5.6 grams of suspected crack cocaine and 4.7 grams of suspected fentanyl.[10]

Manson's blue Infiniti SUV was parked outside 136 Barbour Street.[11] After a drug-sniffing dog alerted to the presence of narcotics on the door and driver's handle, law enforcement opened the car by using keys which were observed near Manson in the back room of the store at 136 Barbour Street.[12] Inside the car was 6.6 kilograms of marijuana in numerous vacuum-sealed bags, more than 400 grams of powder cocaine, and an undetermined amount of U.S. currency in black plastic bags.[13]

In the meantime, law enforcement executed the second search warrant at the U-Haul facility, and they had a manager cut the lock to gain access to the storage unit that was registered in the name of Manson's mother.[14] Inside they found dozens of vacuums-sealed bags with marijuana.[15] They also found several documents with Manson's name on them, including a State of Connecticut vehicle registration certificate.[16] Manson himself has filed an affidavit acknowledging that he kept some of his personal belongings in this unit where the marijuana was found.[17] There was no contraband found inside the second storage unit that the informant had identified with Manson.[18]

Lastly, law enforcement went to Manson's brother's house in Vernon where the informant claimed that Manson kept firearms in a safe. After receiving the brother's consent to a

---

[10] Doc. #46 at 6, 15. The circumstances of the seizure of narcotics from Manson's person are described in the government's briefing in opposition to Manson's motion to suppress and have not been disputed by Manson.
[11] Doc. #86-6 at 3.
[12] Ibid.
[13] Ibid.; Doc. #46 at 7.
[14] Doc. #86-4 at 2.
[15] Ibid.
[16] Id. at 2–4.
[17] Doc. #40-2 at 1 (¶ 4).
[18] Doc. #86-4 at 1–2.

3

search, law enforcement opened the safe by using a combination furnished by the informant and found several firearms inside.[19]

Manson has moved for disclosure of the identity of the confidential informant and all discovery pertaining to the informant's cooperation.[20] The government opposes the motion and has stated a concern for the safety of the informant.[21] I held oral argument on this motion, and with the parties' consent I have been advised *in camera* by the government of the identity of the confidential informant.

## DISCUSSION

Criminal investigations often rely on confidential informants who furnish information with an understanding that their identities will not be disclosed. Confidentiality not only protects an informant from potentially lethal retaliation but also protects the interests of law enforcement in encouraging persons to furnish information about criminal wrongdoing. For these reasons, the general rule is that the government need not disclose the identity of its confidential informants. *See Roviaro v. United States*, 353 U.S. 53, 59–61 (1957); *United States v. Swinton*, 797 F. App'x 589, 596 (2d Cir. 2019); *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997).[22]

But this rule is not absolute. A court may require the government to disclose an informant's identity if the defendant carries his burden to show that "absent such disclosure, he will be deprived of his right to a fair trial." *Fields*, 113 F.3d at 324. As the Second Circuit has explained, "[b]ecause the need for disclosure varies with the circumstances of each case, there is no fixed rule" in terms of when a court should compel disclosure of the identity of a confidential

---

[19] Doc. #86-2 at 2–4; Doc. #39-1 at 3 ("Law enforcement was unable to open the safe until the confidential informant provided the combination to the safe.").
[20] Doc. #39.
[21] Doc. #47.
[22] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

informant, and whether to order disclosure "lies within the sound discretion of the district court." *Ibid.*

"Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden; instead, the district court must be satisfied, after balancing the competing interests of the government and the defense, that the defendant's need for disclosure outweighs the government's interest in shielding the informant's identity." *Ibid.* A district court should consider "'the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *Swinton*, 797 F. App'x at 596 (quoting *Roviaro*, 353 U.S. at 62).

Here, I have considered all relevant factors and am not persuaded that Manson has carried his burden to show that he will be deprived of a fair trial absent disclosure of the identity of the confidential informant. To begin with, the government does not intend to call the informant as a witness at trial. Nor does the government intend to introduce by any other means at trial the substance of any statements made by the informant. Manson insists that he wants "to show the jury that the assertions made by the [informant] cannot be trusted."[23] But if the government does not introduce the informant's testimony or any of the informant's statements, then it is irrelevant whether the jury can trust the informant.

The sole charge against Manson is that he possessed a controlled substance with an intent to distribute it on a single day—October 5, 2022. Although the informant told law enforcement about Manson's prior drug dealing activity, and this information formed part of the basis for the

---

[23] Doc. #85 at 5.

government to seek search warrants, Manson has done nothing to show that the informant had anything to do with the later events of October 5, 2022 when the warrants were executed.

Manson claims that the informant "was not a mere 'tipster,'" and that "the informant himself or herself should be facing criminal charges for the same alleged conduct."[24] But even if that is true, it would not tend to exonerate Manson. It is no defense for a drug dealer to say: "Yeah, but someone else was guilty, too."

The Second Circuit has made clear that "it is not sufficient to show that the informant was a participant in and witness to the crime charged." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988). Rather, the informant's identity and role must also be shown to be "material to the defense"—that is, "significant in determining the defendant's guilt or innocence." *Ibid.*

In an effort to make that further showing, Manson's reply brief surmises that the informant must have planted the evidence against him. But when I asked about this claim at oral argument, I learned that Manson only claims that the informant planted *some* of the evidence to be used against him. He does not suggest that the informant planted the crack cocaine and fentanyl that law enforcement seized from his own person at 136 Barbour Street.

Instead, Manson claims that, because the informant knew of the two specific units at the U-Haul facility that were associated with Manson, the informant must have framed him by planting the evidence that was found in one of the units. But this was a *locked* storage unit. That makes this case different from *United States v. Ham*, 29 F. Supp. 2d 67 (D. Conn. 1998), in which Judge Thompson compelled disclosure of a confidential informant's identity on the basis of a claim that the suspected informant had access to the defendant's *unlocked* garage where narcotics were found. *See id.* at 70–72. The fact that the storage unit was locked makes it far-

---

[24] Doc. #39-1 at 6.

6

fetched to infer that anyone other than Manson or his mother (to whom the unit was registered) had access to the unit. Manson himself has failed to make any showing that anyone else had access to the unit.

Manson next piles speculation upon speculation by claiming that the informant also planted the multiple kilograms of marijuana, additional cocaine, and cash that was found inside his locked car at 136 Barbour Street. He has signed an affidavit vouching that the car was his.[25] But he has made no showing at all that anyone else—much less possibly the informant—had access to the inside of his car.

As to the informant's report about guns in the safe at Manson's brother's house, this is a drug case, not a gun case. The government has not charged Manson with the guns, and the government does not intend to introduce evidence about the safe at trial. So even if the informant planted the guns in the safe, it would make no difference to Manson's defense at trial.

At the end of the day, it is all too easy for a defendant to claim that a confidential informant has planted evidence against him. If merely making such a claim were enough to compel disclosure of an informant's identity, then there would not be much left to the rights and interests of the government and informants alike against disclosure. That is why a defendant must come forward with evidence to show more than a speculative or theoretical possibility that the informant has planted evidence against him. Manson has not done so here. *See United States v. Edmonds*, 535 F.2d 714, 718 (2d Cir. 1976) (affirming denial of motion to disclose confidential informant because "[a]t no time did appellant or his counsel offer any proof that would have validated the idea that the heroin had been planted in Edmonds' suitcase or that he had received the drugs from any individual who might have been the government's informant").

---

[25] Doc. #40-2 at 1 (¶ 5) ("In October 2022, my vehicle was a blue Infiniti SUV.").

I have balanced the competing interests of the government and the defendant. The balance comes out decisively in favor of the government. Accordingly, I will deny the motion to compel disclosure of the identity of the confidential informant.

Still, nothing in this ruling should be read as limiting the right of Manson to argue at trial that evidence was planted against him. He may adduce evidence of others who might have done so. And he is free to argue to the jury that the informant—whoever it was—had a motive to implicate Manson and knew enough about Manson to suggest that the informant was in a position to plant evidence against him.

## CONCLUSION

For the reasons set forth above, the Court DENIES defendant Karlis Manson's motion to disclose the identity of and related information about the confidential informant (Doc. #39).

It is so ordered.

Dated at New Haven this 3rd day of August 2023.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge